UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| WEYERHAEUSER COMPANY | CIVIL ACTION NO. 04-2177 |
|---|---|
| VERSUS | U.S. DISTRICT JUDGE DEE D. DRELL |
| PETRO-HUNT, LLC | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court is Defendant's Motion for Partial Summary Judgment, Doc. #31. The motion has been referred to the undersigned for Report and Recommendation.

This is a suit by Weyerhaeuser Company (Weyerhaeuser), as owner and lessor pursuant to a 1947 mineral lease, against its lessee, Petro-Hunt, L.L.C. (Petro-Hunt). Weyerhaeuser seeks cancellation of the lease for defendant's failure to explore and develop the lease. Plaintiff also seeks to have defendant bury its pipelines running on plaintiff's properties. In this motion, defendant seeks partial summary judgment on both of these issues.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show

> that there is no genuine issue as to any material fact
> and that the moving party is entitled to judgment as a
> matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported
> as provided in this rule, an adverse party may not rest
> upon the mere allegations or denials of the adverse
> party's pleading, but the adverse party's response, by
> affidavits or as otherwise provided in this rule, must
> set forth specific facts showing that there is a genuine
> issue for trial. If the adverse party does not so
> respond, summary judgment, if appropriate, shall be
> entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a

genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 106 S.Ct. 2548 at 2552 (1986); <u>International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc</u>., 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the nonmovant's case. <u>Little v. Liquid Air Corporation</u>, 37 F.3d 1069 (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." <u>Izen v. Catalina</u>, 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. <u>Little</u>, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. <u>Austin v. Will-Burt Company</u>, 361 F. 3d 862 (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. <u>Little</u>, id.

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the

3

"pleadings, depositions, answers to interrogatories, and admissions on file." Celotex,. 106 S. Ct. at 2553.

## **CANCELLATION OF THE LEASE**

<u>The parties' arguments</u>

Petro-Hunt argues that the only production under the lease is between the surface and 4000 feet below the surface of the property, and that Weyerhaeuser, though it is both lessor and owner of the property, has no economic interest in development under the lease because it does not receive any of the royalty payments. The royalties were transferred by Weyerhaeuser's predecessor in title and are now owned by its lessee, Petro-Hunt, who also owns 100% of the working interest in the lease. Therefore, Petro-Hunt reasons, Weyerhaeuser has no "standing or cause of action" to demand that Petro-Hunt explore and develop the lease or to seek its cancellation. Petro-Hunt further argues that any interest Weyerhaeuser has is only a reversionary interest, in the event the lease somehow ends someday, and is therefore a mere expectancy which, under the express provisions of Article 76 of the Louisiana Mineral Code, may not be dealt with as an object of commerce. In other words, it argues, the mere expectancy does not give Weyerhaeuser standing to seek cancellation of the lease.

Weyerhaeuser admits that it has no economic interest in the royalties pertaining to the depths between the surface of the properties and 4000 feet. Nevertheless, it argues that the Mineral

4

Code expressly grants it the right, as lessor, to demand that its lessee, Petro-Hunt, explore and develop the land and act as a good administrator for the benefit of both itself and the lessor, Weyerhaeuser. Weyerhaeuser suggests that the issue is a purely legal one and the only relevant facts are admitted and not in dispute: Weyerhaeuser is the lessor and Petro-Hunt is the lessee and Articles 122 and 136 of the Mineral Code apply, allowing Weyerhaeuser to demand exploration and development, or alternatively, cancellation of the lease.

Discussion and analysis

Article III of the United States Constitution requires that a litigant have standing to invoke the power of a federal court. "To demonstrate standing, the plaintiff must show an injury in fact, a requirement assuring that the court will not pass upon . . . abstract, intellectual problems, but will adjudicate concrete, living contest[s] between adversaries. The injury alleged must be actual or imminent and not abstract, conjectural, or hypothetical." Ward v. Santa Fe, 393 F.3d 599 (5th Cir. 2004), quoting Doe v. Beaumont, 240 F.3d 462, 466 (5th Cir. 2001). The Supreme Court has defined injury as the invasion of a concrete legally protected interest. Lujan v. Defenders of Wildlife, et al., 112 S.Ct. 2130 (1992). Further, "the United States Supreme Court has developed prudential limitations on standing, including a requirement that a litigant generally must assert his or her own legal rights and

5

interests and cannot rest a claim to relief on the legal rights or interests of third parties." Ward, at p. 606, quoting <u>Warth v. Seldin</u>, 95 S.Ct. 2197, (1975).

"[T]he question of who may bring suit is a question answered by substantive law–in a diversity case, state substantive law. This is not to say that standing in federal court is purely an issue of state law in a diversity case; rather, the role of state law is to identify, within federal constitutional limits, the persons who have legally protected interests and what those interests are." See dissent, <u>In Re Asbestos Litigation</u>, 90 F.3d 963, 1022 fn.71 (5th Cir. 1996).

The obvious logic of Petro-Hunt's argument–that Weyerhaeuser, having no right to receive royalty payments from the property, has no interest in whether the property is developed or not–is compelling. However, as Weyerhaeuser points out, it is to the lessor that the lessee's duty to act as a reasonably prudent operator is owed. Louisiana Mineral Code, Art. 122. And it is the lessor to whom the right is granted by the Mineral Code to enforce the requirement that property be explored and developed by lessees. Louisiana Mineral Code, Article 136.

The corollary of Petro-Hunt's argument that because the lessor has no rights to receive royalty payments it has no standing to sue, is that the person who does receive royalty payments, and has an eminent interest in the further development of the property for

6

minerals, would be the proper party to bring suit to enforce the right. Yet the Mineral Code expressly provides that the owner of a mineral royalty has no right to conduct operations or to explore for or produce minerals. Louisiana Mineral Code Art. 81. There is no obligation or right of a royalty owner to develop the property. Continental Oil Co. v. Landry, 41 So.2d 73 (La. 1949). His only right is to receive royalty payments if and when they are produced. Id., Louisiana Mineral Code, Art. 80.

If this court were to hold that Weyerhaeuser, as lessor, may not enforce the right to ensure further exploration and development of the property, then no one could. Such an interpretation of the Mineral Code would run counter to Louisiana's long-standing policy of encouraging the orderly and efficient development of the State's minerals, as provided for in the Mineral Code.

It should also be pointed out that while Weyerhaeuser has no rights to the royalties, it remains lessor under the lease with all the legal rights appertaining thereto. Weyerhaeuser also remains owner of the property. As owner it has, and its predecessors in title had, the sole right to explore for and develop minerals on its property by creating mineral rights in the property, including mineral servitudes, mineral leases and royalty interests. Louisiana Mineral Code, Art's. 6, 8, 15, 16. Weyerhaeuser's interest in the property was and is not just to receive royalties, but also to

exercise other legal rights as owner and as lessor.[1] Those legal rights include the right to explore for and develop its property, regardless whether it receives anything at all for its efforts.

Petro-Hunt cites Perkins v. Long Bell Petroleum, 81 So. 2d 389 (La. 1955) where the court said:

> In a mineral lease, the lessor, being entitled to royalties in the event of production, is interested in requiring his lessee to explore. Not so with a landowner whose property is subject to a mineral servitude. Being without interest in the minerals, he is without right, during the existence of the servitude, to insist upon development . . . .

Petro-Hunt analogizes to Perkins in suggesting that here, as in Perkins, Weyerhaeuser has no interest in the minerals, and thus no interest in their development. The distinction, though, between Perkins and the instant case, is that the Perkins landowner had no interest because his property was burdened with a servitude. He had transferred his right to explore for and develop minerals to the servitude owner. Louisiana Mineral Code, Art. 21. Here, Weyerhaeuser retains its rights, including its right to explore for and develop minerals on its property.

For these reasons, I find that Weyerhaeuser has a right to seek enforcement of the lease provisions including the lessee's duty to explore for and develop minerals and that Weyerhaeuser thus has standing to assert its claims in this court.

---

[1] Compare the Texas case of French v. Chevron U.S.A., 896 S.W.2d 795, 797 (Tex. 1995) where the court observed that, in Texas, the owner of a "mineral estate" possesses five interests: 1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments.

**BURIAL OF THE PIPELINES**

<u>The parties' arguments</u>

Weyerhaeuser points to the original 1947 lease agreement in demanding that Petro-Hunt bury its above ground pipelines which were laid on this timberland. The lease provides in pertinent part, in paragraph 6:

> When required by Lessor, Lessee will bury all pipe lines below ordinary plow depth, and no well shall be drilled within two hundred feet of any residence or barn now on said land without Lessor's consent, if any other location is practicable.

Weyerhaeuser's argument is a simple one-the lease provides for burial and we want the lines buried. Petro-Hunt asserts the defenses of prescription, laches and estoppel in opposing Weyerhaeuser's demand and also argues that the lease provision should be interpreted to apply only at the time the original lines were laid. Petro-Hunt also points out that the demand to bury the pipelines came late, with the filing of this lawsuit, and was not an issue before then.

<u>Discussion and analysis</u>

In interpreting a contract, including a lease, Louisiana Civil Code Article 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent".

The words of the provision are not ambiguous and they are clear. However, to interpret the pipeline burial requirement in the manner suggested by Weyerhaeuser would indeed lead to an absurd

9

consequence. The only reasonable interpretation of the requirement that, if requested, the pipelines must be buried below plow depth[2], is that the provision applies at the time the lines are laid, not some 60 years later. It is not reasonable to believe that the original lessee would have agreed to a provision which, under Weyerhaeuser's interpretation, would have permitted the lessor to watch as all the lines were laid on top of the ground, through the forest, and then immediately, or on a whim or at the first dispute between the parties, to demand that the lessee shut down production and the lines all be dismantled and then buried. This view is also compelled by the context in which the provision appears in the lease agreement-in the same sentence as the prohibition to drilling within 200 feet of any residence or barn "now on said land".

That the meaning is so clear negates the need for parol evidence in the form of testimony as to the intent of the parties in 1947.

Because plaintiff has no right under the lease to demand that defendant bury the pipelines now, it is unnecessary to consider defendant's arguments regarding prescription, laches and estoppel.

For these reasons, the lease provides no right to Weyerhaeuser to demand that the lines be buried and summary judgment should be granted as to this claim.

---

[2] See, as to plow depth as a unit of measurement, or term of art in the mineral law area, <u>Allain v. Shell Western</u>, 762 So.2d 709 (La. App. 1st Cir., 2000).

**RECOMMENDATIONS**

For the foregoing reasons, IT IS RECOMMENDED that defendant Petro-Hunt's motion for summary judgment as to plaintiff Weyerhaeuser's standing to enforce the explore and develop clause of the lease be DENIED.

IT IS FURTHER RECOMMENDED that the motion be GRANTED as to Weyerhaeuser's demand for burial of the pipelines.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 3rd day of November, 2006.

                                            JAMES D. KIRK
                                            UNITED STATES MAGISTRATE JUDGE