RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 09/30/08
BY uh

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

**WEYERHAEUSER CO.** — **CIVIL ACTION NO. 1:04-cv-02177**

**-vs-** — **JUDGE DRELL**

**PETRO-HUNT L.L.C.** — **MAGISTRATE JUDGE KIRK**

---

# RULING

Before the Court is Plaintiff Weyerhaeuser's "Re-Filed Motion for Sanctions and Motion for Partial Summary Judgment" (Doc. 111). In addition to resubmitting its arguments from the earlier Motion for Sanctions (Doc. 73) denied by this Court (Doc. 81), Plaintiff charges that Defendant "Petro-Hunt's bad faith warrants the imposition of an adverse inference that there was in fact 'environmental damage' to all areas that have been remediated and that Petro-Hunt is 'responsible' for such within the meaning of [Louisiana Revised Statutes Title 30, Section] 29," under which, if their motion were granted in its entirety, Plaintiffs would be entitled to recover their costs of proving environmental damage and other associated fees. (Doc. 111 at 3, 8–9.) Plaintiff moves additionally for partial summary judgment in that "a review of the record reveals that there is no genuine issue of material fact as to whether the subject property was contaminated nor as to who is responsible for such damage," seeking a ruling that "'environmental contamination' existed at all sites remediated by Petro-Hunt during its cleanup project from June 19 to September 17." (*Id.* at 20–21.)

For the reasons set forth below, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

## I. *Re-Filed Motion for Sanctions*

### A. Analysis of the Alleged Spoliation of Evidence by Petro-Hunt

Weyerhaeuser's Motion for Sanctions argues that Petro-Hunt's bad faith cleanup of portions of the Tremont Lease entitles Weyerhaeuser to an adverse inference that those areas remediated by Petro-Hunt were environmentally damaged. (Doc. 111 at 3.) Because this Court sits in diversity here we apply our own, federal, evidentiary rules in our analysis. "Evidentiary 'presumptions' which merely permit an adverse inference" on account of bad-faith spoliation claims are subject to the control of federal law. *See King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003) (citing *Herbert v. Wal-Mart*, 911 F.2d 1044, 1047 (5th Cir. 1990)). "An adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the defendant." *Id.* (citing *United States v. Wise*, 221 F.3d 140, 156 (5th Cir.2000) ). "'[T]he circumstances of the act must manifest bad faith.'" *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (citation omitted).

Plaintiffs originally filed suit on October 21, 2004, asserting various claims of environmental damage (Doc. 1 at 3), and reasserted them in an amended complaint on June 22, 2005. (Doc. 19.) Plaintiffs propounded discovery immediately thereafter, seeking:

> REQUEST FOR PRODUCTION NO. 36: All documents concerning activities or plans by Petro-Hunt or any of its predecessors in interest to (or not to) restore any portion of the Leased Premises to their original condition.

and:

> REQUEST FOR PRODUCTION NO. 37: All documents concerning activities or plans by Petro-Hunt or any of its predecessors in interest to (or not to) clean up, plug, and abandon non-active wells, well pads, facilities, and equipment on the Leased Premises.

Petro-Hunt responded with various objections in July 2005. We referred this case to the Louisiana Office of Conservation for a limited assessment of, among other matters, the issue of Petro-Hunt's operational compliance with state regulations on May 2, 2006. (Doc. 70.) The Court also permitted Weyerhaeuser's expert to perform an assessment of the Tremont Lease in the presence of a Petro-Hunt representative, apparently resulting in a lengthy report documenting the site's condition as of May 31, 2006. After referral, parties attended an initial conference with the Louisiana Office of Conservation on June 15, 2006, at which time the commissioner announced that an agency-conducted site inspection to determine regulatory compliance would be occurring in the near future.

Shortly after, acting on information it had, Weyerhaeuser moved for temporary injunctive relief, alleging that Petro-Hunt had commenced an environmental remediation project on the property prior to the commissioner's inspection. (Doc. 73.) This Court entered a temporary restraining order on July 3, 2006, noting in our order that "the condition of the property [is] the essence of this litigation." (Doc. 74 at 1.) After the TRO was vacated at a hearing on July 12, 2006, we instructed the parties to submit an agreed order for the handling of issues in this case. (Doc. 78.) We also denied Plaintiff's request for a preliminary injunction that would enjoin Petro-Hunt's cleanup activities during the pendency of the litigation. Rather than manage the parties' affairs—and we had already

referred the case to the state conservation agency—on July 19, 2006 we ordered that (1) by August 25, 2006 the parties were to submit their conditions for "any alterations to the landscape on the property at issue [that] have been or will be undertaken;" (2) Petro-Hunt must supplement its discovery responses to disclose the nature and extent of any work performed on the property at issue from June 23 to July 12, 2006; and (3) Petro-Hunt must explain all work performed after June 23, 2006 to the Louisiana Office of Conservation within ten days of our order. (Doc. 81.)

Petro-Hunt filed a "Notice of Compliance" soon afterward. (Doc. 84.) Plaintiff objected to this asserted compliance on grounds that Petro-Hunt's disclosures were either so generic as to be useless or not forthcoming at all; e.g., counsel for Petro-Hunt noted in correspondence to Plaintiff simply that cleanup operations were ongoing now as they had in the past, without reference to the time, location, or scope of work, rather than disclosing immediately the detailed, daily work reports and logs prepared by Petro-Hunt's employees. (Doc. 85.) When these were produced eventually, their release was only incremental, even incomplete for certain periods of time, despite Plaintiff's standing discovery requests for production of such materials and this Court's order that Petro-Hunt produce and supplement the same.

Despite earlier assurances to us from Petro-Hunt's counsel to the effect that this remediation was minor and routine maintenance of the sort Petro-Hunt performed periodically, Petro-Hunt's work summaries and invoices for services related to the work up until its completion on September 16, 2008 indicated that a much larger scope cleanup project was being carried out on a lease-wide scale. With regard to the

historical frequency of the type of work being done we now are informed by Petro-Hunt's safety and environmental director of fifteen years who testified explicitly in his deposition that this work was NOT routine maintenance for Petro-Hunt generally; NOT routine for this lease; and NOT routine for him in his experience. (Depo. of David M. Clark at 136.) Another employee, Petro-Hunt's district manager of 25 years covering Louisiana, Mississippi, and East Texas, testified that he had not seen a lease-wide cleanup of this extent in his career. Furthermore, when asked what event inspired the ongoing cleanup that had begun around a month before his deposition, the response to Plaintiff's counsel was: "Y'all's lawsuit." (Depo. of Eugene Joseph Inabnet at 10, 12–13.) Most curiously in light of the work done, Petro-Hunt maintains that it was under no duty to undertake large-scale cleaning, restoration, or any form of remediation on the Tremont property at that time. (*See* Opposition of Petro-Hunt, L.L.C. to Weyerhaeuser's Re-Filed Motion for Sanctions and Motion for Partial Summary Judgment Under La. R. S. 30:29, Doc. 121 at 6–8.)

B. An Adverse Inference Is Warranted

The Court finds evidence that the circumstances of Petro-Hunt's remediation of conditions on the Tremont Lease property constituted a deliberate spoliation of relevant evidence. Petro-Hunt absolutely knew that the condition of the various sites on the lease associated with hydrocarbon production was relevant to the issue of environmental damage in this suit. In destroying evidence of the land's condition in the face of ongoing legal proceedings in this Court, not to mention an impending visit by the Louisiana Office of Conservation, all this despite Petro-Hunt's insistence that they were under

neither legal nor contractual duty to perform thorough remediation of the land at this point, they acted in bad faith. If concerns of fulfilling their legal obligations of prudent operation—obligations about which this Court makes no ruling at this time—compelled this lease-wide cleanup, Petro-Hunt ought simply to have contacted opposing counsel or this Court and expressed their concerns. Not having done this in the context of ongoing litigation Petro-Hunt's actions are deemed, and are understood by this Court to be, entirely inappropriate.

Pursuant to this finding we grant, in limited part, Plaintiff's motion to the extent that the Court permits Plaintiff its requested adverse evidentiary inference that there existed environmental damage on those areas of the Tremont Lease remedied, cleaned, or otherwise ameliorated by Petro-Hunt from the beginning of litigation until September 16, 2006. This is not to say that such an inference may not be controverted by Petro-Hunt's evidence at trial or Plaintiff's lack thereof. Petro-Hunt has simply started off on an evidentiary bad foot as a result of its conduct. Rather than deciding this entire issue against it—perhaps effectively deciding the entire case against it—the Court has chosen a moderate evidentiary sanction that balances the degree of spoliation against the importance of the issue to the whole proceeding.

With that in mind, inferring the existence of environmental damage is not the same as inferring the extent of that environmental damage. As to the degree of environmental damage that was present, or is present, the Court makes no determination at this time. *Cf. Bouzo v. Citibank*, 96 F.3d 51, 60 (2d Cir. 1996) ("[T]he district court acted well within its discretion in concluding that an appropriate adverse

inference might be drawn against [a party who fails to provide evidence he has undertaken to produce] . . . . The precise nature and extent of the allowable inference or inferences to be drawn are matters submitted to the discretion of the district court in the first instance.") (citations omitted). We presently have insufficient evidence before us to gauge the full extent of the damage or cleanup—i.e., superficial soil replacement as opposed to a full-on *ad inferos* excavation—or the environmental damage that was present. The extent or degree of environmental damage appears to be the crux of what Plaintiff must prove at trial and is too closely intertwined with the issue of Petro-Hunt's obligations as an alleged reasonable, prudent, operator for us to explore that territory at this point. The parties remain free to engage in reasonable discovery or expert investigation necessary to ascertain the extent of environmental damage to remediated and unremediated areas of the Tremont Lease so as to present the issue of environmental damage more fully to the jury at trial. In that regard, the matter of adverse inference presentation to the jury will be handled by appropriate jury instruction.

Additionally, with regard to Plaintiff's insistence upon the applicability of Louisiana Revised Statutes 30:29—outlining "the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation," *id.* § 29A, while finding the statute helpful in reaching the present ruling, we decline to apply the procedural aspects of this state statute in the present diversity action. Accordingly, we refrain from ordering the development of "a plan or submittal for the evaluation or

remediation to applicable standards of the contamination that resulted in the environmental damage" or similar procedural undertakings in this case. *See* LA. REV. STAT. ANN. § 30:29C(1) (2007).

However, in a more substantive vein, section 29 continues:

> In any civil action in which a party is responsible for damages or payments for the evaluation or remediation of environmental damage, a party providing evidence, in whole or in part, upon which the judgment is based shall be entitled to recover from . . . the party or parties found legally responsible by the court, in addition to any other amounts to which the party may be entitled, *all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department.*

*Id.* § 30:29E(1) (emphasis added). "The award of attorneys' fees is governed by the law of the state whose substantive law is applied to the underlying claims." *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005). Here, we have granted a sanction of an adverse evidentiary inference that there was environmental damage to those portions of the lease remediated by Petro-Hunt. Thus, in allowing the adverse inference, we also find that Petro-Hunt is legally responsible for said environmental damage. We have made no definitive, legal pronouncement of the extent of "environmental damage;" nor have we ordered "the evaluation or remediation of environmental damage." These issues remain yet on the table to be settled between the parties or resolved at trial, Plaintiff's adverse inference notwithstanding. As such, we are in no position to determine or allocate at this time an award of the various expenses, costs, or fees associated with the production of evidence of environmental damage or the

attorneys' efforts toward that end. Plaintiff's request for them are denied at this time, but without prejudice toward a representation of those amounts after a possible successful outcome on the merits or otherwise.

## II. *Motion for Partial Summary Judgment*

Concurrent with their motion for sanctions, Plaintiff moves the Court to grant a partial summary judgment against Petro-Hunt that "'environmental contamination' existed at all sites remediated by Petro-Hunt during its cleanup project from June 19 to September 17." (Doc. 111 at 21.) Plaintiff urges that this result is compelled because "a review of the record reveals that there is no genuine issue of material fact as to whether the subject property was contaminated nor as to who is responsible for such damage." (*Id.* at 20.) Based on the evidence before it the Court is not convinced of Plaintiff's assertions as to the factual certainty and extent of environmental damage on the Tremont property, although the sure identity of the party responsible therefor is clear. Thus, the evidence is insufficient to warrant a grant of summary judgment. Because, in addition to the reasons outlined *supra*, the Court is willing only to grant an adverse evidentiary inference of environmental damage based on the evidence before it at this point, Plaintiff's motion for partial summary judgment is DENIED.

## III. *Conclusion*

Based on the foregoing considerations and conclusions, Plaintiff's "Re-Filed Motion for Sanctions" (Doc. 111) against Petro-Hunt is **GRANTED IN PART**, and the Court sanctions Petro-Hunt as follows: **Plaintiff is entitled to an adverse evidentiary**

**inference that there existed environmental damage caused by Petro-Hunt on those areas of the Tremont Lease that were remedied, cleaned, treated, or otherwise environmentally ameliorated by Petro-Hunt from the beginning of this litigation until September 16, 2006**. All affirmative relief requested in the motion under consideration not expressly granted in the previous sentence is **DENIED**;

Furthermore, Plaintiff's contemporarily filed "Motion for Partial Summary Judgment" (also in Doc. 111) is **DENIED.**

SIGNED on this 29 day of September, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE